# THE WISCONSIN.[1]

## BEEBE *v.* THE WISCONSIN.

*(District Court, E. D. New York. May 6, 1887.)*

1. SALVAGE—SERVICES—PILOT AS SALVOR—AWARD.
    Libelant, a pilot, was on board the steamship W., but had not taken charge, when the vessel ran ashore. Thereafter he rendered assistance by suggestions as to getting her off, and by taking charge of her when she was floated in a rudderless condition. He incurred no risk; and was not called upon for any extraordinary exertion. *Held*, that he should recover $1,000 salvage.

2. SAME—WHEN PILOT MAY BE SALVOR.
    A pilot may be a salvor, although aboard the vessel, if he has not yet assumed the relation of pilot to her.

3. SAME—NEW JERSEY STATUTE—EXTRAORDINARY PILOTAGE SERVICES.
    The statute of New Jersey (section 16 of the issue of 1846) relates to extraordinary pilotage services. A case of pilotage services necessarily presupposes the vessel capable of being navigated. So a pilot, rendering aid to an unnavigable vessel, is not bound by the above statute, and his services may be not those of a pilot, but of a salvor.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.
*Whitehead, Parker & Dexter*, for libelant.
*Nash & Kingsford*, for claimant.

BENEDICT, J. The principal objection made to the recovery of salvage by the libelant is that the libelant, being a pilot, was under a pre-existing covenant to do what he did towards getting the vessel off the shore, where she had grounded when not in his charge. But, although the libelant was a pilot, and was on board the steamer, he had not assumed the relation of pilot to the vessel. According to an understanding to that effect, he had gone below to bed, to be called when his services as pilot were required, and while so below the ship grounded hard upon the shore of the sea. He was under no agreement to assist the vessel after she had grounded.

Another objection to a recovery of salvage by the libelant is based upon the provision of the statute of New Jersey, (section 16 of the issue of 1846,) as follows:

"That every pilot or deputy-pilot who shall have exerted himself for the preservation of any vessel appearing to be in distress, and in want of a pilot, shall be entitled, for any extraordinary services, to such sum as the pilot and master, owner, or consignee can agree on, or, in case of not agreeing, as the commissioners shall determine to be a reasonable reward."

This provision, it is said, made it the duty of the libelant to do what he could to aid the vessel after she grounded, and he cannot recover salvage, because services required by law as a duty are never compensated as salvage services. But I am of the opinion that the provision of the statute above referred to created no legal obligation on the part of the libelant to exert himself for the preservation of this vessel, situated as she was. If this vessel, grounded as she was on the shore of the open sea, can be said to be "a vessel in want of a pilot," within the meaning of the statute referred to, still I am of the opinion that under the decision of the supreme court in *Hobart* v. *Drogan*, 10 Pet. 108, it cannot be held that the libelant was under legal obligations to render any services to her. The statute referred to relates to extraordinary pilotage services, and the present is not a case of pilotage services. A case of pilotage services, as pointed out by the supreme court of the United States in *Hobart* v. *Drogan*, 10 Pet. 123, necessarily presupposes a vessel in a situation capable of being navigated. The steamer in question at the time of the commencement of the libelant's services was unnavigable, for she was hard ashore. The claim of the libelant appears to be clearly within the principle of the decision in *Hobart* v. *Drogan*. In this case, as in that, the services in question were rendered to a vessel wholly unnavigable, by one not connected with the vessel by any pre-existing covenant, and under circumstances when no legal obligation to aid in her preservation attached to the one rendering the services. I am bound, therefore, to conclude that the libelant's services were not those of a pilot, and by consequence were those of a salvor.

There remains to consider the amount proper to be awarded the pilot

for these services.    The large sum suggested by him as a proper reward is based upon the idea that he saved the steamer.    But such was not the fact.    According to the testimony of the master and officers of the steamer, the pilot did nothing of any value.    I am of the opinion, however, that he aided in the rescue of the steamer.    The suggestions made by the pilot were of value, and his presence on board the vessel after she floated, and before she was taken in tow, tended to relieve the master to a certain degree, and were calculated to give a confidence to those on board which otherwise might not have existed.    Indeed, for a time after the vessel floated, and before she was taken in tow, the pilot was in charge, and under his direction the steamer, although rudderless, instead of dodging off and on as the master intended to do, waiting for tugs which had been sent for, approached several miles nearer the bar, moving astern, and using her sails in connection with her screw to direct her course.    But the pilot incurred no risk, and was not called on to put forth any extraordinary exertions.    The suggestions which he claims to have made are such as would have occurred to any competent master, and it is impossible to say that the salvation of the steamer was due to the exertions of the pilot.    But he did render services of value to the steamer as she was situated, and he is entitled to be compensated liberally for what he did.    In my opinion, he will be so compensated by awarding him the sum of $1,000.    For that sum, with costs, let him have a decree.